UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **FERN FRANKS, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| **v.** } | **CASE NO. 3:02-cv-2364-RDP** |
| } | |
| **ANTHONY R. CLAYTON, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

Pending before the court is Defendant C.W. Waddle Logging, Inc.'s Motion for Summary Judgment. (Doc. # 176). The motion was under submission, without oral argument, as of January 20, 2006. (Docs. # 161, 174).

This case concerns a fatal trucking accident that occurred in Tennessee in August 2002. Fern Franks, the representative of decedent Joel Franks, has brought suit individually and on behalf of all surviving children and heirs of Franks, alleging that the accident occurred as a result of the negligence and wantonness of Anthony R. Clayton; Carolyn Pharr, doing business as Pharr Trucking; Billy Pharr; Scotty Pharr; and C.W. Waddle Logging, Inc.[1] It is undisputed that the alleged active tortfeasor is Clayton, the driver of a logging truck that collided into the dump truck being driven by Franks. Plaintiff claims that C.W. Waddle Logging, Inc. ("Waddle Logging") is liable for Clayton's actions, and therefore Franks' death, under the doctrine of *respondeat superior*. Waddle Logging's motion for summary judgment asserts that Clayton was an independent contractor for whom Waddle

---

[1] In addition to the claims in this case, also pending are a number of claims, counter-claims, and third party claims related to insurance coverage for the underlying accident. On September 19, 2005, the court severed the insurance coverage claims into a separate action. (Doc. # 174).

Logging is not liable. For the reasons outlined below, the court finds that Defendant's motion for summary judgment is due to be denied.

**I.      Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

II.     **Relevant Undisputed Facts**[2]

On August 12, 2002, Plaintiff's decedent, Joel Boyd Franks, died as a result of injuries he received while involved in an accident that occurred on Olive Hill Road in Hardin County near Savannah, Tennessee. The accident occurred when a Kenworth logging truck and trailer (collectively, the "Kenworth") driven by Defendant Anthony Clayton veered over the center-line of the road and made contact with Joel Franks' dump truck, which Franks was driving in the opposite direction. Defendant Pharr Trucking (owned by Defendants Billy Joe Pharr, Scotty Pharr and Carolyn Pharr)(hereinafter "Pharr Trucking" or the "Pharrs") owned the Kenworth operated by Clayton at the time of the accident. (C.Pharr Dep., at 113-14; B.Pharr Dep., at 17-18).

Pursuant to a contract with TMA Wood, Inc., Waddle Logging was cutting lumber on a site in Savannah, Tennessee near the accident location. (Waddle Dep., at 37; Doc. # 179, Ex. 1). Waddle Logging's contract required it to cut certain timber and to "deliver [the lumber] to the delivery point or points." (Doc. # 179, Ex. 1). The contract also provided: "All work, operations, and activities of every kind and character to be performed by or on behalf of [Waddle Logging] shall be controlled and done solely and exclusively by [Waddle Logging] or with labor hired, paid, supervised, and directed by [Waddle Logging]." (Doc. # 37, Ex. 1).

To fulfill the obligation to haul the cut timber, Waddle Logging hired outside truck companies. (Waddle Dep., at 29-30). One of the truck companies hired by Waddle Logging was

---

[2] If facts are in dispute, they are stated in the manner most favorable to the non-movant, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993), although the court has noted when the parties dispute material facts.

Pharr Trucking. (Waddle Dep., at 31).[3] At the time of the accident, Clayton was working directly for Pharr Trucking, who maintained the exclusive right to terminate him and paid his salary. (Clayton Dep., at 26, 27, 41, 46; Waddle Dep., 25-26, 149; B.Pharr Dep., at 17).[4] Both the Kenworth and Clayton were added to the insurance policy taken out by Pharr Trucking. (C.Pharr Dep., at 116, 130).

### A.     Waddle Logging's Interaction with Clayton

It is undisputed that both C.W. and Brad Waddle, owners of Waddle Logging, were at the logging site every day while the cutting and hauling was done (S.Pharr Dep. at 36-37; Clayton Dep. at 38; C.W.Waddle Dep. at 34, 126; B.Waddle Dep. at 22-23), while the Pharrs were present at the site infrequently. (C.Pharr Dep. at 28; C.W.Waddle Dep. at 40, 125-26; Clayton Dep. at 118, 130-31, 144; B.Waddle Dep. at 23). In addition to other duties, C.W. Waddle made sure that the logs were cut to a particular length and loaded properly on the trailer. (Clayton Dep. at 121).

At certain times, Clayton's testimony suggests that Waddle Logging would tell him when he should report to work and what he would do while there (Clayton Dep. at 29-31, 56-57, 93-94), while at other times, Clayton indicated that his hours were set by Billy Joe Pharr, Clayton's supervisor. (Clayton Dep. at 95, 98). Brad or C.W. Waddle discussed weekly quotas with Clayton, and they often held meetings with Clayton and the Pharrs "out there in the woods . . . if things wasn't going good [sic]." (Clayton Dep. at 41-43). The Waddles also marked trailers loaded with timber

---

[3] The agreement between Waddle Logging and Pharr Trucking was not reduced to writing. C. Pharr Dep. at 38, 42, 46; B.Pharr Dep. at 7-9; C.W.Waddle Dep. at 31). However, Pharr Trucking was free to work for other entities and other individuals. In fact, Pharr Trucking also was hauling food products at the time. (C.Pharr Dep., at 73-75).

[4] Waddle Logging paid Pharr Trucking every week. (Waddle Dep., at 46, 49).

for Clayton to pick up, leaving him instructions where the trailer was to be delivered. (Clayton Dep. at 48-49).[5]

**B.    The Accident**

On the day of the accident, Brad Waddle was driving the Kenworth to the main road to the drop-off location when he encountered Clayton riding with another Pharr Trucking driver. (Clayton Dep. at  53-55, 61-63, 101, 112, 133, 148-49).  According to Clayton, Waddle got out of the Kenworth and told Clayton to drive the Kenworth to the drop-off location, pick up a trailer, and return with it to the cutting location in the woods so it could be loaded with timber by Waddle Logging's loading team.  (Clayton Dep. at  53-55, 61-63, 101, 112, 133, 148-49).  Clayton then recalls that Waddle got into the truck with the other Pharr Trucking driver and returned to the cutting location in the woods.  (Clayton Dep. at 53-55, 61-63, 101, 112, 133, 148-49).  According to Brad Waddle, when he encountered Clayton on the day of the accident, Clayton just switched vehicles, without being told to do so, and drove the Kenworth to the drop-off location. (B.Waddle Dep. at 42-47). The accident occurred when Clayton was returning in the Kenworth from the drop-off location to the cutting location in the woods. (Clayton Dep. at 55).

After the accident, Clayton called C.W. Waddle by radio or cell phone to come down to the accident scene. (C.W.Waddle Dep. at 60-61)  When he arrived, C.W. Waddle and Clayton talked

---

[5] If the timber was intended for the Courtland mill, Brad Waddle gave the driver a ticket instructing him where to take the load. (S.Pharr Dep. at 37-38; C.W.Waddle Dep. at 40-41, 103-04; Clayton Dep. at 27-29, 48-50, 129-30). If the timber was intended for any of the other various mills, C.W. Waddle or Brad Waddle would tell the Pharrs or the driver where to deliver the timber. (S.Pharr Dep. at 37-38; Clayton Dep. at 27-28, 141). The various mills gave the driver a bill of lading after their delivery, and the driver turned all of those in to C.W. Waddle. (B.Pharr Dep. at 15-16; S.Pharr Dep. at 45; C.W.Waddle Dep. at 46-47).

about the accident, and C.W. Waddle got Clayton's version of the events, took measurements, and tried to determine whether Clayton was at fault. (C.W.Waddle Dep. at 62, 66-67, 141-42). Brad Waddle also arrived and talked with the State troopers in an attempt to convince them that Clayton did not cause the accident. (B.Waddle Dep. at 56-57). While the investigation at the scene progressed, Clayton sat in Brad Waddle's truck. (Clayton Dep. at 83-84). Following the accident, Clayton's blood sample tested positive for hydrocodone (Lorcet) and methamphetamine. (Clayton Dep. at 73).

### III.   Applicable Substantive Law and Analysis

The salient question for the court to consider on Waddle Logging's motion for summary judgment is whether the relationship between Waddle Logging and Clayton (through Pharr Trucking) was that of employer/independent contractor or principal/agent (also referred to as employer/employee or master/servant). If, as Waddle Logging argues, the undisputed facts indicate that the relationship was the former, then pursuant to Tennessee law,[6] Waddle Logging cannot be liable for the alleged negligence of Clayton, an independent contractor. *See Powell v. Virginia Constr. Co.*, 13 S.W. 691, 692 (Tenn. 1890); *Wilson v. Thompson Constr. Co.*, 86 S.W.3d 536, 537 (Tenn. Ct. App. 2001).[7] On the contrary, if the undisputed evidence does not support a finding that Clayton was an independent contractor, then under Tennessee's doctrine of *respondeat superior*,

---

[6] Because the accident giving rise to this action occurred in Tennessee, the substantive issues in this case are governed by Tennessee law. *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991).

[7] Although an exception to this general rule of non-liability exists when the activity is inherently dangerous, *Cooper v. Metro. Gov't of Nashville and Davidson County*, 628 S.W.2d 30, 32 (Tenn. 1981), that exception does not apply to employees of the independent contractor, for "an employer must be able to rely on the skill of the independent contractor as to the contractor's employees." *Walker v. Robertshaw Controls Co.*, 1988 WL 125820 at * 2 (Tenn. Ct. App. Nov. 28, 1988).

Waddle Logging may face liability for Clayton's actions if he was acting within the scope of his employment when the accident occurred. *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000).

Although there are several factors to be considered in the analysis of the relationship between Waddle Logging and Clayton – including the right to control conduct, the right of termination, the method of payment, the freedom to select helpers, the furnishing of tools and equipment, self-scheduling of work hours, and the freedom to offer services to other entities – the issue of control is the determinative factor. *Wilson v. Thompson Constr. Co.*, 86 S.W.3d 536, 542 (Tenn. Ct. App. 2001); *Youngblood v. Wall*, 815 S.W.2d 512, 517 (Tenn.App. 1991); *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985); *Tenn. Code Ann.* § 50-6-102(11).

> One of the principal factors in determining whether the relationship between the parties is that of principal and agent or master and servant, on the one hand, and employer and independent contractor, on the other, is the character of control reserved by the employer over the doing of the work. If he reserves the right to control or direct the time, place and methods and means by which the work is to be done, the relationship is that of principal and agent or master and servant; on the other hand, if he is concerned with the results only and the employee is allowed to perform the work in any manner he pleases as to time, place, means and methods, and is accountable only for results, then he is an independent contractor.

*Howell v. Shepherd*, 196 S.W.2d 849, 852 (Tenn. App. 1945). *Compare also Powell v. Virginia Construction Co.*, 13 S.W. 691, 697 (Tenn. 1890) ("An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods without being subject to control of his employer, except as to the result of his work.") *with Zimmerman v. Elm Hill Marina*, 839 S.W.2d 760, 762 (Tenn. App. 1992) ("In determining liability under the theory of *respondeat superior*, the courts have recognized the decisive question to be

whether the defendant had the power or right to control the wrongdoer's specific conduct or manner of doing work.").

While control is the "key element in the creation of a principal-agent relationship, . . . in Tennessee, it is not the right to control the result that is determinative of the existence of an agency relationship; it is the right to control the actual conduct of the work." *Tucker v. Sierra Builders*, 2005 WL 1021675, at *8 (Tenn.Ct.App. 2005); *see also Armoneit v. Elliott Crane Serv., Inc.*, 65 S.W.3d 623, 629 (Tenn. Ct. App. 2001)).[8] The question of control is ordinarily one of fact. *Knight v. Hawkins*, 173 S.W.2d 163, 166 (1941).

When all factual disputes and justifiable inferences are resolved in favor of Plaintiff, the court finds that the "determinative factor" of control is in dispute, preventing summary judgment for Waddle Logging.[9] Inconsistencies in the summary judgment evidence – both internal inconsistencies in the alleged tortfeasor's testimony and contradictions between the testimonies of different

---

[8] "This right to control is not dependent on whether the employer exercises the right; it is merely material that the right exists." *Youngblood,* 815 S.W.2d at 517. Whether there is a reserved right of control "is determined by examination of agreements among the parties or of the parties' actions." *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 724 (Tenn. 2000).

[9] The court is aware of Waddle Logging's argument that the relevant factors enumerated by the Tennessee courts suggest that Clayton was an independent contractor. *See Wilson*, 86 S.W.3d at 542 (considering the right to control the conduct, the right of termination, the method of payment, the freedom to select helpers, the furnishing of tools and equipment, self- scheduling of work hours, and the freedom to offer services to other entities). For example, it is undisputed that Pharr Trucking paid Clayton directly and maintained the right to terminate him. (Clayton Dep., p. 26, 41, 48; Waddle Dep., 25-26; B.Pharr Dep., p. 17). Pharr Trucking furnished Clayton with his equipment– it owned the Kenworth Clayton was driving on the day of the accident (C. Pharr Dep., pp. 113-14; 122-23; B.Pharr Dep., pp. 17-18), and Clayton and the truck were covered by an insurance policy taken out by Pharr Trucking. (C.Pharr Dep., pp. 116, 130). Moreover, Pharr Trucking (and therefore Clayton) was free to offer services to other entities. (C.Pharr Dep., pp. 73-75). However, because the "determinative factor" of control is in dispute in this case, there are material issues of fact that must be resolved by a jury.

deponents – present questions of fact for the jury to resolve, including the extent of Waddle Logging's involvement in Clayton's daily work, whether Waddle Logging directed Clayton's actions on the day of the accident, and what weight, if any, should be given to Waddle Logging's contract with TMA Wood, Inc., which provided: "All work, operations, and activities of every kind and character to be performed by or on behalf of [Waddle Logging] shall be controlled and done solely and exclusively by [Waddle Logging] or with labor hired, paid, supervised, and directed by [Waddle Logging]." (Doc. # 37, Ex. 1). Accordingly, because Plaintiff has adduced sufficient evidence of control for the fact-finder to determine the nature of the relationship between Waddle Logging and Clayton, Waddle Logging's summary judgment motion is due to be denied.

**IV.    Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is due to be denied. A separate order will be entered, and this matter will be placed on the court's next pretrial docket.

**DONE** and **ORDERED** this ____24th____ day of January, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE